## HOLLIDAY *v.* STATE.

[67 South. 181.]

1. CRIMINAL LAW. *Harmless error. Exclusion of evidence. Instruction. Alibi. Reasonable doubt. Cautionary instruction.*
When the defendant got the benefit of excluded evidence in spite of the rulings of the court, he cannot complain.

2. CRIMINAL LAW. *Instructions. Alibi. Reasonable doubt.*
It was not error to refuse an instruction that defendant was entitled to an acquittal, where the evidence to sustain an *alibi,* raises a reasonable doubt of guilt when the court has already fully instructed in regard to reasonable doubt.

3. CRIMINAL LAW. *Cautionary instructions.*
There is no law authorizing a court to instruct that detectives' evidence should be looked upon with suspicion. The jury are, the sole judges of the credibility of witnesses and the weight of evidence.

APPEAL from the circuit court of Coahoma county. HON. F. B. WATKINS, Judge.

Dan Holliday was convicted of the unlawful sale of intoxicating liquors and appeals.

The facts are fully stated in the opinion of the court.

*Salter & Longino,* for appellant.

The court erred in refusing to give instructions number eight asked by defendant to wit: The court instructs the jury for defendant, that where the defense is an alibi and the evidence in support of it, viewed in connection with all the testimony, is in this particular case sufficient to raise a reasonable doubt as to guilt, the accused is entitled to an acquittal.

In this connection the evidence shows that appellant was not in the city of Clarksdale on the day and date the state's witnesses, Detective Will Loyd and Detective Chas. Lewis testified they saw appellant driving a dray wagon containing casks of beer in the streets of the city of Clarksdale, and furthermore evidence shows that appellant was at his place of business at and for some time after the state's witnesses claim they bought the liquor from appellant at the Railroad Depot in the city of Clarksdale, some four city blocks away from the said appellant's place of business. The alibi was clearly shown in the two instances above stated by the testimony of Ben Wyatt and the court erred in refusing the said instruction.

The court erred in refusing instruction number six, to wit: The court charges the jury for defendant, that although you may not disbelieve the evidence of a hired detective, merely because he is a hired detective, still the testimony of a detective should be cautiously scrutinized in connection with all the circumstances proven and the jury may in their deliberations wholly disregard any and all of the testimony of any witness provided they believe from the facts and circumstances that such witness has corruptly and willfully testified falsely.

These state witnesses were detectives hired, as shown by the evidence, for the purpose of catching persons guilty of the illegal sale of whiskey. We think the evidence warrants a total disbelief of them as it was shown by witnesses that Walter Sellers was a drayman and stayed around the depot all the time when not engaged in draying; and it was further shown that Walter Sellers was not identified in the lower court by detectives even though they say that they had seen him on several occasions; and further, that having seen that they had failed in the identification of Walter Sellers, drayman, and intent on getting someone, and the jury would have, in all probability, said that detectives were after get-

ting revenge or swear falsely on defendant. We ask that they scrutinize carefully a person who was hired to discover a particular thing. We are not able to cite any authority supporting this contention but it is a well-known matter of fact which we, think needs no arguing in this court where an expert is employed to testify and that after working, thinking and studying, that his mind unwittingly will be prejudicial in favor of the man who employed him. Then as a matter of common knowledge will a detective's mind be prejudiced in favor of the man who employed him. Then as a matter of common knowledge will a detective's mind be prejudicial in favor of his employer when he knows that his very job depends upon pleasing his employer. We may be pardoned in comparing an expert who, as a rule, is a person of cultivated mind to that of a detective who, as a rule, is a person of more or less questionable character. As a matter of common knowledge we know that detective evidence without corroboration is taken with a grain of salt so to speak. Law is nothing more or less than the crystallization of public sentiment and if we, as men of business and society, as a whole, scrutinize the testimony and statements of detectives more than we would of an ordinary person who was not interested, then why should not this fact be stated to the jury as a proposition of law? Why cannot a juror have the same latitude in weighing the sworn testimony of a detective as he would have in unsworn testimony in a matter of business? We submit above reference is not only good law, good reason and good logic deducted from matters of public knowledge, but is and should be the law in governing the jury in their deliberations in weighing testimony of detectives who are hired to find out what they testify to and learn.

*Ross A. Collins,* Attorney-General, for the state.

Appellant first assigned as error the refusal of instructions numbers six and eight for the defendant. In-

struction number six was properly refused because it was a comment on the evidence of the state's witnesses. The proper statement of the law in regard to such witnesses was embraced in instruction number seven which fully states the principle properly. Instruction eight complained of is, at a glance, both vague and confusing, made especially so by the words: "In this particular case."

Second, the alleged errors complained of herein arise out of the refusal of the trial court to permit the instruction of various questions and answers in regard to proving an error made in the identification of the appellant in the court of the justice of the peace, by which testimony appellant seeks to impeach the credibility of state's witnesses, but I submit the proposed evidence was immaterial and irrelevant and properly refused.

Third, a careful survey of the record shows that the error complained of embraces the refusal to permit proof of various immaterial matters which could have thrown no light on the case at all, nor would it have gone to affect the credibility of the witnesses. The evidence shows that, despite the fact Walter Sellers was first brought before the justice of peace, the witnesses at once identified Dan Holliday as being the person who sold them the whiskey. The fact that appellant was procured to come into the court of the justice of the peace and sit by the counsel of Walter Sellers who was then charged with the sale, could throw no light on the truth or falsity of prosecuting state's witnesses' testimony to the effect that Dan Holliday was in fact the guilty party as the latter was positively identified by the witnesses, who state that they are certain as to his identity, and especially was all of such testimony irrelevant and immaterial on the trial of the case *de novo* in the circuit court.

Cook, J., delivered the opinion of the court.

Appellant was convicted for the unlawful sale of intoxicating liquors, and, being not altogether satisfied, appeals to this court for relief.

We gather from the record that an affidavit had been made against Walter Sellers for selling intoxicating liquors. When this cause came on for trial before the justice of the peace, the witnesses for the state were asked to point out the man who sold them the liquor, and they pointed to the defendant in this case—Dan Holliday. Whereupon Walter Sellers was discharged, and the officer of the law made an affidavit against Dan Holliday.

We also gather from the record that, on the trial of appellant in the circuit court, his counsel offered to prove what occurred on the trial of Sellers in the justice court. It seems that Sellers, or his counsel, endeavored to set the stage so as to entrap the state's witness into pointing out some other person for Sellers than Sellers himself.

To pull off this little comedy, appellant was induced to sit behind counsel in such manner as to indicate that he was the party on trial. When the state's witnesses were asked to point out the man who sold them the liquor, they promptly identified Holliday as the man. So it was that instead of staging a comedy, so far as appellant is concerned, they had staged a tragedy. In other words, they had baited a hook to catch suckers, but they had caught a tiger instead.

When appellant undertook to have a witness rehearse the harrowing details of this serio-comic performance in the justice court, the district attorney interposed an objection, which was sustained. It is a bit difficult to see how a rehearsal of the occurrence in the justice court could be of any value to appellant. True, it might have furnished amusement to the jury and kept them guessing as to the pertinence of the diversion to the matter

in hand. · There seems to be no doubt that the state's witnesses were unacquainted with the man who sold them the liquor. They did not know his name; but they did know the man.

The state's witnesses are called detectives, which means that they were used by the officers to catch "blind tigers" and to break up the sale of intoxicants. They say they bought liquor from this defendant and were informed that his name was Sellers; that he told them that his name was Sellers when they got the liquor. The jury believed the detectives, and it thus appears that, when appellant attempted to play the clown in the free show pulled off in the justice court, he succeeded in putting his own neck in the halter.

The record, we think, shows that the jury got the benefit of what defendant was seeking to prove in spite of the rulings of the court upon the details and the manner of getting the alleged evidence before the jury.

This defendant undertook to show his innocence by proving that he was not at the alleged scene of the crime at the time fixed by state's witnesses, but was at another place. He did not succeed very well, but we will assume that he did for the purpose of the next assignment of error.

The court refused to instruct the jury as follows:

"The court instructs the jury for defendant that where the defense is an alibi, and the evidence in support of it, viewed in connection with all the testimony, is in this particular case sufficient to raise a reasonable doubt as to guilt, the accused is entitled to an acquittal."

We do not think there was any error in refusing this instruction. Of course the court should, when requested, define alibi and inform the jury that it is a legal defense. The instruction, as requested, merely tells the jury that they should acquit the defendant, if they had a reasonable doubt of his guilt. The given instruction told the jury the same thing in different language.

The court refused to instruct the jury that it was their duty to ''cautiously scrutinize'' the testimony of a detective. The jury should cautiously and carefully weigh the evidence of all witnesses, but we know no statute or rule of evidence which requires the jury to regard detectives as liars, until the contrary is proven. There is no law authorizing the court to say that detectives' evidence should be looked upon with suspicion. The jury are the sole judges of the credibility of witnesses and the weight of evidence, and they are just as able to discriminate between witnesses as is the judge.

*Affirmed.*